The next case called Oral Argument is Wilson v. Quinn. Counsel, whenever you are ready, may proceed. May it please the Court, I am here on behalf of the appellants, the sheriffs in this case. And it's my understanding that you have the briefs ready, so you've read them, so I don't want to... We have, thank you. So I'm going to just stick to a couple points that I think are very important in this case. I think probably one of the main issues or main questions that everybody here is asking themselves is, why didn't we just go to the Court of Claims? Why didn't you go to what? Why didn't we just go to the Court of Claims? And avoid all of this and go directly to there. And the answer to that question is, we didn't have to. And in doing the research for where should we go with this case, it was our understanding, when I say our, that my co-counsel comes from Oral Argument, that this isn't an action against the state. And that's one of the things I want to point out to this Court is, you know, there is a presumption in this state that the state itself does not violate the law, that it doesn't violate the Constitution. So when an officer of the state violates the law or violates the Constitution, he's doing it in an individual capacity. He's not doing it on behalf of the state. It's not technically the state violating the law. And a lot of the cases that are cited in our initial brief, our reply brief, go to the point that when a state official acts in violation of the law or in excess of his authority, such is not an action of the state. And, therefore, there is no community applied to him. No, he's stripped of his official status. And that's really consistent with this presumption that the state of Illinois does not violate the law. And that's why we felt that the Circuit Court was the avenue that we should have taken, because there is no immunity attached to here. What do we have here? We've got a statute and we've got a constitutional violation that we're alleging. The sheriffs are elected for a four-year term. And in this case, it was from December of 06 to November of 2010. And the second term was from December 10 through November 14. And I should just point out that the two plaintiffs, Sheriff Wilson, who is now deceased, and Sheriff Huff, they did, obviously, Sheriff Wilson died of being deceased and Sheriff Huff retired in 2010. But that's why we sought to bring in the other sheriff, Sheriff Adams, because he did continue on and got re-elected for the next term. But what do we have here? We've got a constitutional Article 7, Section 9B that says during that four-year term of that elected official, you cannot decrease or increase his salary. That is in the Constitution. And the salary that we are talking about here is the stipend, which is part of 55 ILCS 546003D. And that statute specifically says that the sheriffs shall receive the stipend annually. So it is a discretionary statute. It is a mandatory statute. It is something that the sheriffs receive every year. It has been changed after all of this, but we are still looking at the laws as it was in 2010 and 2011. And there's cases in my initial brief on page 14 that specifically talk about the fact that stipends are, in fact, salary. So what we've got here is we've got a stipend, which is a salary, that's supposed to be given to the sheriffs on an annual basis, and a governor who's decided, I'm just not going to give it to them. 2010, 2011, even though he received a lump sum of money saying, Governor, you need to use it for the sake of government, for the expenses of the government. And you have discretion to use it however you want in those discretionary areas, because those are areas where you get a little bit of money, a little bit less. But when it's a statutory authority, you've got to do it, because it's in the statute. And the governor decided that he's just not going to allocate that money to these sheriffs. And that's what we're talking about here. We're talking about a governor acting outside of his authority, acting in violation of his statute and in violation of the Constitution. And that is why we feel that this is not an action against the state, and therefore the immunity should not apply. One of the other points that I wanted to mention is one of the government's arguments is that the suit is trying to control how the state is going to expend its money. We're trying to take the resources that are given to the state and tell the state, you have to pay it in this bucket, as opposed to paying it somewhere else. That's not what this lawsuit is about. What controls where that money goes is the statute. The statute is very clear. You have $6,500 annually that has to go to every sheriff. There's 102 sheriffs I'll mention. Cook County is not involved in the suit because their population is oversized for the statute. So we're talking about 101 if this court remands this back and the child court decides we can do a class action suit. So we are talking about 101 sheriffs who per statute have the right to this money, and the governor is telling them, no, I'm not going to give it to you. So when the governor is arguing that we're trying to control how he allocates this money, in effect we're not. The statute has done that. The legislative body has already done that for us. What we're trying to say is, governor, you have to act in compliance with the Constitution. You have to act in compliance with the statute. So what we are asking for is a declaratory judgment telling him and us what right does he have, from what power does he have to eliminate or amend the statute. Did your complaint ask for declaratory relief only or mandamus? We sought declaratory relief only, and then once the declaration is made, if that's the decision, that's when we would go for a mandamus. So you want to try a two-step process? That seems to be the most logical, to go through the declaratory judgment first and get the declaration of the rights of the parties, and then add on the mandamus. And how many plaintiffs did you start out with then? We initially started with two plaintiffs, which would have been Sheriff Wilson, now deceased, and Sheriff Huff. After we filed the lawsuit, we were in constant contact with the Illinois Sheriffs Association. At that point, we were the attorneys for the Illinois Sheriffs Association, and there were talks about other sheriffs wanting to join the suit. But they wanted to really pull everybody and make sure that they wanted to do that. Well, my question is, why did the court not allow you to appoint Kathryn Wilson as special representative for George Wilson? There was really no explanation from the court. I believe one of the problems that happened is Sheriff Wilson passed away, and there was a 90-day period where we had to file all the paperwork, and it hadn't been done because Ms. Wilson was in the short state of mind, I don't know how else to put it, and we just didn't want to push her. So once we felt that she was capable of going through this and talking to her, we got her to agree to step into the shoes, so to speak. Did the court give any reason for not allowing Sheriff Russell Adams to join? No. And did the court give any reason for denying your motion to amend, to add a class action? No. The way this court worked is we went in front of the judge, judged him for oral argument on the motion to dismiss, and that was the only time that we appeared before the judge. We gave him the oral argument. He at that point said, you know, send me over all of the cases that you've cited. Send me over any other information that you want me to consider, and I'll make a decision. And at that point, the decision was just that piece of the record, the piece of paper. There was really no analysis. So had the motions to amend and to add plaintiffs been filed before the motion to dismiss or after? I believe they were filed after, after the motion to dismiss was filed, but I'm uncertain as to when the briefs were filed as to when exactly it was filed. I could look it up if you'd like. It could take a moment. No, we'll do that. I'm sure we can do that. But the judge did deny all of the motions and really did not give us any reason as to why. I would presume that it's because he felt that this was barred by immunity, and he felt that it wouldn't have cured the defects that he saw in his reasoning. But as I stated before, this is not an action against the state, so our complaint does not have any defects, and therefore all of those motions, and really the motion to add Sheriff Adams, if the class action is granted, is unnecessary because he's part of the class. And what kind of class were you seeking? We have the 101 sheriffs that would have been the sheriffs in 2010, and then there was a new election, and some sheriffs got reelected and some did not. So then we're asking for the sheriffs that were newly elected in 2011. Are you asking for money or declaratory relief or both? We're asking for declaratory relief. Under the class? As a class. For the class. And then at that point we would go, once we have a declaratory judgment, we would go for mandamus, which would include monetary damages. But even though there's monetary damages here, we're really talking about a governor and giving him the guidance and telling him, you have to follow the statute, you have to follow the Constitution. You can't unilaterally change it. You had them, the money was there, and the statute doesn't say it's limited to budgetary restraints, it's limited to allocation. It has been changed, but at that point in 2010-2011 there was no limitation. Therefore, it was a mandatory statute, and it was mandatory and not discretionary for him to allocate that money to the sheriffs. And that's, in effect, what we're arguing. Everything else I think has been touched upon in our briefs, so I'm not just going to retry it here, but I will reserve any time I have left for my rebuttal. If there's any other questions. Okay. Thank you very much. Counsel? Thank you very much, Your Honor. I'm John Schmidt, and I'm here on behalf of the governor, who is the defendant, Ali, in this case. We're asking that the trial court's dismissal on sovereign immunity grounds be affirmed, and our alternative argument is that this is not a proper use of the declaratory judgment procedure. Before I go into the legal arguments, though, I just want to clear one thing up. This is not a situation where the governor just decided, well, I'm going to pick on county sheriffs. I'm not going to give them the money that they're entitled to. What happened here was that the legislature, this is not the only county official that gets salaries, stipends, or something else from the state. County treasurers do. Auditors do. Supervisors of assessments. Assessors do. And there is a case that the county treasurers were brought to. What happened was that the legislature used to appropriate in line items amounts for each of these officials who were entitled to some state money. For the years in question, the legislature changed that. What they did was give the governor, or what they did was appropriate a lump sum under grants for all of the officials. Unfortunately, in these two years, it wasn't enough to pay everybody everything to which they were entitled. And that's really the problem. And the governor can do many things, but the governor can't appropriate money by himself. And that is part of the problem in this case. The governor can't just unilaterally decide to spend money if it's not appropriated. So that, too, is a problem. Mr. Schmidt, can you tell me how you distinguish this case from Jorgensen versus Laguna Beach? Yes, I can. Jorgensen involved a very unique context, and that was judges who were not receiving the full compensation to which they were entitled. The Supreme Court explicitly said in Jorgensen that in entering the order that it did, it was relying on its constitutional authority to administer the Illinois courts. And the court indicated that it was important to do this because there is a very unique situation with the judiciary. It's dependent on the other two branches of government. And it's uniquely vulnerable to the other two branches of government. And that's why the court felt that it needed to rely on its administrative authority to enter the order that it did. We don't have a situation here where the courts would have administrative authority to direct payment of stipends to sheriffs or to other county officials. And this is not the only lawsuit on this subject. There was one that the county treasurer brought in Sangamon County, Illinois. I think it's Illinois County Treasurer's Association Behavior that was recently dismissed. So I would anticipate an appeal being taken to the 4th District in that case. So I just wanted to provide some context for what's going on here. Audrey? You are not contesting the proposition that the stipend was determined and owed but not paid, are you? It was not paid, that's correct, Your Honor. And Ms. Zinovich has, I believe both parties have put the amounts, they were partially paid. They were partially paid. And I believe both parties have the same, agree on the same figures. Right. So since a basis of the Jorgensen case was also an agreed position, factual position, in which certain amounts were not paid or not allocated to be paid, isn't your distinguishing Jorgensen based on the remedy that the Supreme Court determined as opposed to the underlying position, which is similar to the facts in this case? I mean, there are factual similarities, but I think there's a huge distinction when it comes to the judiciary. And the distinction is the Illinois Supreme Court's constitutional authority. But that explains the rationale and the remedy. What I'm talking about is isn't there a factual similarity between Jorgensen and this case? Oh, sure. Sure. I would not deny it. I think Jorgensen involved cost of living as opposed to stipends. But no, I wouldn't deny that, Your Honor. And I also wouldn't deny that this is a very unfortunate situation involving the sheriffs, the treasurers, and some other county officials. Bill? Sure. Was there any action taken by the, does the record reflect that there was any action taken by the governor to ameliorate, in effect, we know this is owed, this is what's been appropriated to try to deal with later, or anything was, is there anything in the record as to trying to make some arrangements to deal with this in the future, or was it simply this is what we have, so this is what you are going to receive? The one thing there is in the record, there's nothing in connection with these two years. What the record does reveal in terms of the problem being taken care of for future years, for 2012 and 2013, I mean future years compared to these years in which the full stipends weren't paid, what the record reveals is they changed the statute. Right. And a definite source for the funds has been identified now. Right. No, I realize that. But there's nothing with regard to 2010. Okay. In the record. Prospective remedy, but no retroactive correction of the situation is basically what the record reflects. That's correct. And our argument is, of course, that to seek retrospective relief, they would have to go to the court of claims. They can't go to the circuit court. I don't understand that argument if the statute says that you're to get $6,500, which it does, as the stipend, and the governor says I'm not paying that, isn't that an act outside of his authority or in violation of the law? It's arguably in violation of the law. Which would then take into effect the officer's suit exemption? Not in all cases, no. Why doesn't it in this case? Because of two things. The relief that they're seeking, which is retrospective relief to address harm that has already taken place, as opposed to prospective relief. And the second reason is the source of the governor's duty arises from his state employment, as opposed to being a general duty that everyone in the public would have. And we cited case law in support of both of those propositions. And I would also point out Section 8A of the Court of Claims Act gives the court of claims jurisdiction over all claims that are founded upon a law of the state of Illinois. If my opponent was corrupt, that would be meaningless. That proposition would be meaningless. So the fact that there are allegations of a violation of statute does not necessarily take the matter out of court of claims jurisdiction. And I mentioned the two factors the courts look to. What is the source of the duty? And here, any duty that the governor had would arise from his status as a state official. That keeps it within the court of claims. And secondly, the relief is intended to assess liability against the state for past harms. And I would draw the court's attention to the biomedical laboratories case that we cite in our brief. There, the Supreme Court held that a Medicaid vendor was improperly thrown out of the Medicaid program, suspended from it. And the court said, this does not have sovereign immunity implications because what they're seeking is reinstatement. That reinstatement may involve future payments by the state, but that's all right. That's not barred by sovereign immunity because the relief looks ahead. But the court specifically said, if the plaintiffs had sought damages for the months in which they were suspended, in other words, damages for past harms, they would not be able to get it. That would be barred by immunity. In Jorgensen, the plaintiffs were awarded damages for past amounts.  You're just saying again that that's totally distinct because of the branches of government. Yes, that is our argument. But you are correct, Your Honor. We can see that Jorgensen did involve, I think it involved both past and prospective. And if you take your argument further, the second class they want to certify goes into 2014. So now they are looking for forward-looking damages. As I understand, they have two classes. One was for past harm, and then another one went into 2014. But as we pointed out in our brief, though, the full stipends are being paid now. They were paid in 2012. And if they haven't been for 2013, they will be. And that's why. So you think that ultimately if this case came back, that would be a moot issue because they're being paid? Yes. To the extent that they were seeking prospective relief, there really wouldn't be a basis for it. And the statute has also changed, as I mentioned, so that now a source for this money is identified, the person with the property tax replacement fund. And that's what it comes out of. Or that's what it's supposed to come out of. And, Your Honor, I think for similar reasons, this isn't really an appropriate declaratory judgment action because a declaratory judgment is really supposed to really cut off a controversy and address it before an action for damages accrues. And here an action for damages has already accrued. And in terms of a declaration for the future, the stipends, again, are now being paid. So we would contend, for really similar reasons for our sovereign immunity argument, this really is not an appropriate resort to the declaratory judgment procedure. And one of the cases that we cite in our brief alicia set, they said that really that the plaintiff was seeking not only to address past liability but also was intending to use the lawsuit to foster future litigation. And by the plaintiff's own admission, that's what they're doing here. They're using the declaratory judgment action as step one to a mandamus action. And it's not even clear that mandamus would be appropriate against the governor in this situation. Again, the governor has limits in terms of spending money that is not appropriated. So for those reasons, we maintain that sovereign immunity did bar this action in the circuit court. But in the alternative, this is not an appropriate declaratory judgment action because it's one that seeks to assess liability for past harms instead of one that's intended to cut off the controversy and get a declaration of rights before there's an action, before damages have really occurred. And for those reasons, we ask that the circuit court be affirmed. And I think you're on your screen. Thank you. Counsel? I'll just touch upon a few points very briefly here. I've heard a lot of talk with Governor Quinn and this crying for, you know, the state is in poor financial shape. We don't have money. We need to cut certain things. And I can understand that argument. The problem with that is that we have a statute here that mandates you to pay these monies out. And this is very similar to a case that was recently decided. And I didn't cite it in my briefs. It just didn't come up in this kind of context. But if you're familiar with it, it was AFSCME versus Governor Quinn. And it's been all over the news. It was very similar in the sense that Governor Quinn entered into a contract with this union for raises for the employees and then, because of financial difficulties, entered into a supplemental agreement that it would be delayed. And then at that point decided, again, that due to financial difficulties he couldn't pay, period. And AFSCME sued. And the judge in the circuit court in Crook County basically said, you know what, you obligated yourself to this. And we understand you have financial difficulties, but you can't just say I don't have any money. You haven't proven that you don't have any money. You haven't proven that you've given money to other people, but you haven't given it to these people. So what I'm ordering you to do is once you do have the money, pay it. And, in effect, that's what we're asking, is to get a declaratory judgment saying, listen, this is due owed to these sheriffs. From 2010 and 2011, these additional monies that were not paid to them is a salary that they should have received. And when the money is available and allocated, it should be given to them. And that's what we're asking for, is for this money to be allocated and given to them. So it kind of just reminds me of that AFSCME case, and I hope that you find it helpful. I'm hearing a lot of arguments also about the business going backwards in time, and we're asking for past wrongs to be righted. This case was really filed on November 30th, 2010, right in the middle of this whole controversy. November 30th is a date that we all remember from my office because it's the date the sheriffs go out of office. And that's exactly why we chose that date is because that was the last date those stipends could have been paid. And these sheriffs, either they had to file a lawsuit or they would have been barred from doing it because they were out of office the next day. So when we filed the case in 2010, it was still due and owing in that year, so it wasn't for past wrongs. And then in 2011, when we amended, we sought to amend the complaint, we sought to amend it for 2011 as well. So even though there's this argument about past wrongs, this money that's due and owing, it's a continuing violation. And every day that it's not being paid is a continuing violation of the Constitution and a continuing violation of the statute. What about the Attorney General's argument, basically, in my view, would be claim splitting? Were you claim splitting? First you're going to try the declaratory relief, and then if you get that, you're going to try mandamus. Isn't that claim splitting? Well, we felt that it would be the best way to approach this particular suit. I understand, but do you agree that that's claim splitting? Are you familiar with that term? I'm not sure if I would apply it here because I feel that we needed to get the declaratory judgment first before we could go forward with the mandamus. So, yeah, I guess it would be splitting it up in a sense. But I feel in this particular situation it was the appropriate thing to do. So I was looking for your class action allegations. You have two classes, one for an injunctive relief claim and one for money. Are you splitting those as well? I have to think about it for a moment. Okay. I'm trying to remember if I complained and make sure I get it right. I was looking for it myself. I don't think that the intent was to claim split. If that was what originated out of it, that wasn't the intent. Our intent is to declare to the governor, you have to follow the statute, you have to follow the Constitution, and from that stems the payment of the stipend. So that was the intent. It ultimately came up to being claim splitting, but I could see that being the case. I don't know if that's what you wanted to hear. I found the motion. Thanks. Let's see. The other thing that opposing counsel brought up is that generally in violation of the statutes, do not take it out of the claims of court. There's also an argument here that the governor acted outside of his authority. Not only did he violate the statute, but he also acted outside of his authority by doing what he did. He didn't have the power to amend the statute or to disregard the statute. So the cases are very consistent that if the public official, the state official, is acting outside of his authority, the claim is not barred by sovereign immunity, and it is not a claim against the state. I guess I'm done. Thank you. Thank you, counsel. We appreciate the briefs and arguments of both counsel. The case under advisement.